UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

Jacques Dorcinvil,

                Petitioner,          **MEMORANDUM & ORDER**

  - against -                 No. 20-cv-600 (KAM)

Marlyn Kopp,[1]

                Respondent.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Petitioner Jacques Dorcinvil, proceeding *pro se*, petitions for a writ of habeas corpus in accordance with 28 U.S.C. § 2254, alleging that his state custody violates his federal constitutional rights due to ineffective assistance of counsel, various trial errors, and suppression of exculpatory evidence. (ECF No. 6 pp. 2–28, Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by Person in State Custody ("Pet.").)  For the reasons below, the Court respectfully denies the Petition.

---

[1] The proper respondent in a federal habeas action is the warden or superintendent of the facility where the petitioner is held. *Green v. Lee*, 964 F. Supp. 2d 237, 253 (E.D.N.Y. 2013).  The original respondent in this action was Christopher Miller, the Superintendent of Great Meadow Correctional Facility when the action was filed.  (*See* Pet. 2.)  The Court, on its own initiative, deems the Petition amended to change the respondent to the Superintendent of Sing Sing Correctional Facility, where Dorcinvil is currently held.  (*See* ECF No. 31, Notice of Change of Address); *Pellis v. Wright*, No. 19-cv-149 (EAW), 2022 WL 3587755, at *4 n.4 (W.D.N.Y. Aug. 22, 2022).  The Court retains subject-matter jurisdiction because Dorcinvil was convicted and sentenced in the Eastern District of New York.  *See* 28 U.S.C. § 2241(d).

## **BACKGROUND**

Dorcinvil's Petition claims fifteen different grounds for relief covering all aspects of his trial, which he previously raised across multiple state court appeals and collateral proceedings that spanned nearly a decade.  The Court provides only a broad overview of the facts and procedural history here and discusses more specific details undergirding each of Dorcinvil's asserted grounds for habeas relief further below.

## I.   **Factual Background**

On January 14, 2007, Claudette Marcellus returned home to her Brooklyn apartment with her twelve-year-old son, B.M.,[2] to find that her boyfriend, Jacques Dorcinvil, had locked them out. (ECF No. 20-1 pp. 296–829, Trial Tr., 24:9–19.)[3]  Dorcinvil opened the door, argued with Claudette, and then began hitting her with a metal chair and broomstick.  (*Id.* 25:13–27:9.)  When B.M. attempted to flee and call the police, Dorcinvil punched and kicked him.  (*Id.* 27:10–28:2.)  The police arrested Dorcinvil, but Claudette signed a waiver of prosecution and declined to press charges.  (*Id.* 197:6–21, 202:22–203:10.) After the incident, Claudette obtained a no-contact order of protection against Dorcinvil, but Dorcinvil continued living at

---

[2] The Court refers to the surviving victim, who was a minor at the time, only by his initials.
[3] The Court cites all docket entries according to their internal pagination, not the page numbers assigned by the Court's electronic docketing system.

her apartment.  (*Id.* 35:5–15.)

On May 4, 2007, while the order of protection was still in effect, Dorcinvil attacked Claudette with a knife and then chased B.M. around the apartment, stabbing him in the back and pushing him onto a couch.  (*Id.* 37:1–38:9.)  Claudette rushed over to shield B.M. with her body, and Dorcinvil repeatedly stabbed them both.  (*Id.* 38:10–22.)  After the attack, Dorcinvil gathered some clothes and left the apartment, dropping several items, with Claudette staggering after him.  (*Id.* 39:15–40:10.)  When the police arrived, they found Claudette dead in a pool of blood outside the building and followed a trail of bloody handprints and footprints back into her apartment.  (*Id.* 63:6–66:3, 239:10–13.)  Paramedics arrived and transported B.M. to the hospital.  (*Id.* 241:7–251:3.)

The officers who inspected the apartment afterward found a bloody jacket inside the apartment containing a wallet and other papers, including an expired passport in Dorcinvil's name.  (*Id.* 451:3–453:1.)  Joseph Perry, the lead detective on the case, ran a background check on Dorcinvil and responded to tips that came through the department hotline.  (*Id.* 457:19–458:12.)  Later that month, the police arrested Dorcinvil at the Haitian consulate in Miami while he was requesting a passport.  (*Id.* 462:14–463:14.)  The State charged Dorcinvil with murder, attempted murder, assault, contempt (for violating the order of

3

protection), and illegally possessing a weapon.  (ECF No. 20 pp. 1-34, Aff. in Opp'n to Pet. for Writ of Habeas Corpus ("Pitts Aff.") ¶ 6.)

## II.  Procedural Background

### A.   Trial

Dorcinvil, represented by Stanford Bandelli, Esq., was tried by a jury in the Supreme Court of New York, Kings County. (*Id.* ¶ 7.)  The State's witnesses included B.M., several police officers, a DNA expert, a paramedic, a medical expert, and the landlord of the apartment building where Claudette and B.M. had lived.  (*See generally* Trial Tr.)  Detective John Briano, who had investigated the January and May incidents and accompanied B.M. in the ambulance ride to the hospital, did not testify. (*Id.* 200:17-24, 436:21-23; Pitts Aff. ¶ 7 n.14.)  Dorcinvil did not testify and called no witnesses.  (Trial Tr. 475:4-9.)  The jury convicted Dorcinvil on all counts.  (*Id.* 533:22-535:2.)  On December 16, 2009, the court sentenced him to an aggregate term of imprisonment of fifty-seven years to life.  (ECF No. 20-1 pp. 830-48, Sentencing Tr., 14:21-22.)

### B.   Collateral Challenges and Appeals

On November 15, 2011, Dorcinvil filed a *pro se* motion in state court to vacate the judgment of conviction under Section 440.10 of the New York Civil Practice Law and Rules, arguing that his trial attorney was constitutionally

ineffective.  (ECF No. 20-2 pp. 6–23, Mot. to Vacate Judgment
Under CPL 440/10 ("1st 440 Mot.").)  He also moved for
additional DNA testing on two pieces of evidence recovered from
the crime scene.  (*Id.* 23.)  The court denied Dorcinvil's
motion, (ECF No. 20-4, Decision & Order ("D&O on 1st 440
Mot.")), and denied Dorcinvil's motion to renew and reargue his
motion, (*See* ECF No. 20-5 pp. 2–3, Notice of Appeal).  On
January 29, 2013, the Appellate Division, Second Department,
denied leave to appeal.  (ECF No. 20-5 p. 8, Decision & Order on
Appl.)[4]

On February 5, 2013, Dorcinvil, represented by new
appointed counsel, Erica Horwitz, Esq., appealed his judgment of
conviction, claiming various due process and Confrontation
Clause violations.  (ECF No. 20-6, Br. for Def.-Appellant
("Appellate Br.").)  Dorcinvil later filed a *pro se* supplemental
brief raising ineffective trial counsel and additional due
process claims.  (ECF No. 20-8, Def.-Appellant Suppl. *Pro Se* Br.
("Suppl. Appellate Br.").)  The Appellate Division, Second
Department, affirmed Dorcinvil's conviction.  *People v.
Dorcinvil*, 122 A.D.3d 874 (2d Dep't 2014).  The New York Court
of Appeals denied leave to appeal on March 26, 2015, *People v.
Dorcinvil*, 30 N.E.3d 170 (N.Y. 2015), and on June 15, 2015,

---

[4] The Appellate Division has discretion whether to hear an appeal of the
denial of a motion to vacate.  N.Y. C.P.L.R. § 450.15.

denied Dorcinvil's *pro se* request for reconsideration, *People v. Dorcinvil*, 36 N.E.3d 97 (N.Y. 2015).  Dorcinvil did not petition the United States Supreme Court for a writ of certiorari.  (Pet. 3.)

On December 9, 2015, Dorcinvil filed a second *pro se* motion to vacate the judgment of conviction in state court, seeking additional DNA testing and also claiming ineffective counsel, actual innocence, and failure to disclose exculpatory evidence. (ECF No. 20-16, Def. C.P.L. § 440.10 *Pro Se* Brief ("2d 440 Mot.").)  The court denied the motion on October 27, 2016.  (ECF No. 20-19, Mem. ("D&O on 2d 440 Mot.").)  Dorcinvil appealed the portions of the trial court's order unrelated to additional DNA testing, and the Appellate Division, Second Department, denied leave to appeal on August 18, 2017, Decision & Order on Appl., *People v. Dorcinvil*, No. 2016-13011, 2017 WL 3573486 (2d Dep't Aug. 18, 2017).  As to the request for additional DNA testing, however, the court deemed Dorcinvil's "motion papers . . . a timely notice of appeal from that portion of the [trial court's] order."  *Id.*  On October 27, 2017, the New York Court of Appeals summarily dismissed Dorcinvil's application for leave to appeal the Appellate Division's ruling. *People v. Dorcinvil*, 89 N.E.3d 1261 (N.Y. 2017).

While his second motion to vacate was pending, Dorcinvil on July 6, 2016, filed a *pro se* petition for a writ of error *coram*

6

*nobis*, claiming Horwitz was ineffective in litigating his direct appeal.[5]  (ECF No. 20-11, Writ or [sic] Error *Coram Nobis*, Def.'s *Pro-Se* Br. ("*Coram Nobis* Pet.").)  The Appellate Division, Second Department, denied the application, *People v. Dorcinvil*, 149 A.D.3d 867 (2d Dep't 2017), and the New York Court of Appeals denied leave to appeal on July 20, 2017, *People v. Dorcinvil*, 85 N.E.3d 102 (N.Y. 2017).

In January 2019, Dorcinvil, represented again by Horwitz, appealed the portion of the trial court's order denying Dorcinvil's request for DNA testing raised in his second motion to vacate.  (ECF No. 20-21, Br. for Def.-Appellant ("DNA Appellate Br.").)  The Appellate Division, Second Department, affirmed, *People v. Dorcinvil*, 175 A.D.3d 1421 (2d Dep't 2019), and the New York Court of Appeals denied leave to appeal on December 12, 2019, *People v. Dorcinvil*, 139 N.E.3d 804 (N.Y. 2019), and denied reconsideration on February 12, 2020, *People v. Dorcinvil*, 142 N.E.3d 1169 (N.Y. 2020).

### C.   Federal Habeas Review

On January 24, 2020, Dorcinvil timely[6] filed commenced this

---

[5] A *coram nobis* petition is an appropriate vehicle in New York state court to raise a claim of ineffective appellate counsel.  *Wade v. Melecio*, No. 21-cv-9138 (GHW) (JLC), 2023 WL 2152489, at *18 (S.D.N.Y. Feb. 22, 2023), *R&R adopted by* 2023 WL 2500676 (S.D.N.Y. Mar. 14, 2023).

[6] A habeas petitioner has one year from the date his or her state court conviction becomes final to seek relief in federal court.  28 U.S.C. § 2244(d)(1)(A).  A petitioner's state court conviction becomes "final" for habeas purposes, however, only after proceedings conclude in the United States Supreme Court or time expires to petition for a writ of certiorari in that court.  *Davis v. Racette*, 99 F. Supp. 3d 379, 384 (E.D.N.Y. 2015).  A

action by filing a petition for a writ of habeas corpus.  (ECF
No. 1.)  Dorcinvil's petition included a letter requesting that
the Court hold the Petition "in abeyance" until the New York
Court of Appeals decided his request for reconsideration of its
denial of leave to appeal the Appellate Division's decision on
Dorcinvil's appeal as to his second state court motion to
vacate.  (ECF No. 1-4 p. 1, Jan. 17, 2020, Ltr. from Jacques
Dorcinvil.)  On February 27, 2020, Dorcinvil filed another
letter notifying the Court that the New York Court of Appeals
denied reconsideration and requesting the Court to adjudicate
his Petition.[7]  (ECF No. 6 p. 1, Feb. 20, 2020, Ltr. from Jacques

---

petition for a writ of certiorari seeking review of a judgment of a lower
state court that was subject to discretionary review by the state court of
last resort must be filed within ninety days after entry of the order denying
discretionary review.  U.S. Sup. Ct. R. 13(1).  Here, because Dorcinvil did
not seek relief in the United States Supreme Court, his state court
conviction became final on September 14, 2015, the date ninety-one days (an
additional day added because the ninetieth day fell on a Sunday) after the
New York Court of Appeals denied discretionary review of the Appellate
Division's decision.  Dorcinvil thus had one year after that date to file his
Petition in this Court.  The December 9, 2015, filing of Dorcinvil's second
motion to vacate tolled the one-year limitation period, however.  *See*
28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application
for State post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted toward any period
of limitation under this subsection.").  That motion remained pending until
December 12, 2019, when further state appellate review finally became
unavailable.  *See Clemente v. Lee*, 72 F.4th 466, 476 (2d Cir. 2023).  Because
the periods after Dorcinvil's conviction became final when his second motion
to vacate was not pending amounted to less than one year on the date on which
he sought federal habeas review, his Petition is timely.

[7] Dorcinvil's letter includes a request for appointment of counsel.  There is
no constitutional right to appointed counsel in habeas cases.  *Harris v.
United States*, 367 F.3d 74, 77 (2d Cir. 2004); *accord Rucano v. LaManna*,
No. 18-cv-4586, 2020 WL 978825 (KAM), at *4 (E.D.N.Y. Feb. 28, 2020).  The
Court has discretion whether to appoint counsel, and the threshold question
is whether the petitioner's claims are "likely to be of substance."  *Rucano*,
2020 WL 978825, at *4 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61
(2d Cir. 1986)).  As set forth below, the Court can adequately resolve all
Dorcinvil's claims based on the parties' submissions and the ample state

Dorcinvil.)  The letter attaches a second petition for a writ of habeas corpus virtually identical to the first, exhibits, and another memorandum of law.  (*See generally* ECF No. 6.)  The Court follows the Second Circuit's directive to construe the second petition as a motion to amend the initial petition and thus treats the second petition as the operative Petition.  *See Stewart v. Dep't of Corr.*, No. 20-cv-2136 (JMA), 2020 WL 3415768, at *2 (E.D.N.Y. June 22, 2020) (citing *Ching v. United States*, 298 F.3d 174, 175 (2d Cir. 2002)).  It makes no practical difference, however, because the contents of the two are substantively the same.  The Court will still reference the memorandum of law Dorcinvil submitted in support of his first petition to the extent it helps clarify the bases for some of his claims.

Dorcinvil first claims his trial counsel was constitutionally ineffective for (1) failing to object to parts of Detective Perry's testimony, (2) failing to object to comments in the State's summation, (3) failing to request a hearing to suppress property seized from him during his arrest,

---

court record, and it finds that Dorcinvil's claims are unlikely to be of substance.  Further, based on its review of the parties' submissions and the state court record, the Court finds no factual or legal ambiguities material to Dorcinvil's claims that appointed counsel might reasonably be expected to help clarify.  Dorcinvil competently articulated the factual and legal bases for his claims, and he identified no facts he was unable to investigate without counsel nor conflicting evidence that would require cross-examination.  Thus, the Court finds that appointing counsel would not serve "the interest of justice."  *Id.* at *3.

(4) failing to move to strike an allegedly biased juror,

(5) failing to investigate a potential alibi witness, and

(6) failing to retain a DNA expert.

Dorcinvil further claims his appellate counsel was constitutionally ineffective for failing to raise a Confrontation Clause claim regarding the State's DNA and medical evidence.

Dorcinvil also claims his general due process rights were violated at trial due to (1) the trial court's denial of his motion to exclude B.M.'s testimony and denial of his request for disclosure of additional parts of B.M.'s mental health documentation, (2) the admission of allegedly unduly prejudicial exhibits, (3) the trial court's denial of Dorcinvil's motions to sever the charges regarding the January 2007 and May 2007 incidents, (4) the admission of a statement on direct examination that the trial court allegedly suppressed and ruled could be used only for impeachment, (5) the trial court's refusal to give a missing witness instruction as to one of the detectives that investigated the January 2007 and May 2007 incidents, and (6) the admission of testimony referencing Dorcinvil's "past arrests" and "complaints."

Finally, Dorcinvil claims the State suppressed exculpatory evidence.

## **LEGAL STANDARD**

A petition for a writ of habeas corpus under 28 U.S.C. § 2254 is the vehicle by which a state prisoner obtains federal review of his or her state custody. *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003). The court may issue the writ only if it finds that the petitioner is in custody in violation of federal law. 28 U.S.C. § 2254(a). Any claim for which the petitioner seeks habeas relief must have been fairly presented for review and exhausted in the state court. 28 U.S.C. § 2254(b)(1)(A).

Respect for judicial federalism requires that a federal habeas court refrain from resurrecting a claim the petitioner "procedurally defaulted" in state court. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017). Procedural default occurs when the state court clearly and expressly relied on a state procedural rule to dispose of the petitioner's claim, regardless of whether the state court also addressed the merits of the claim. *Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018). The petitioner may raise a procedurally defaulted claim in a federal habeas proceeding only by showing either (1) good cause for the default and resulting prejudice or (2) that he or she is actually innocent. *Gomez v. United States*, 87 F.4th 100, 107 (2d Cir. 2023).

If the state court adjudicated the petitioner's claim on

11

the merits, the Antiterrorism and Effective Death Penalty Act ("AEDPA") requires the habeas court to give the state court's decision great deference. *McCray v. Capra*, 45 F.4th 634, 640 (2d. Cir. 2022). The state court need not explain its reasoning for its decision to be considered "on the merits." *Johnson v. Williams*, 568 U.S. 289, 298 (2013). If the petitioner presented the claim to the state court and the state court denied relief, the habeas court may presume the state court adjudicated the claim on the merits absent any contrary indication or state law principle. *Id.*

Under AEDPA, a state court decision on the merits must stand unless it was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented" in the state court. 28 U.S.C. § 2254(d). "Clearly established federal law" means a holding, as opposed to dicta, of a Supreme Court decision that existed at the time of the relevant state court decision. *McCray*, 45 F.4th at 640. The habeas court may not use Second Circuit precedents to "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule" that the Supreme Court "has not announced." *Jackson v. Conway*, 763 F.3d 115, 134 (2d Cir. 2014) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64

(2013)).

A state court decision is "contrary to" clearly established federal law if it contradicts a Supreme Court decision on a legal question or decides a case differently from how the Supreme Court decided a case with materially identical facts. *McCray*, 45 F.4th at 640.  A state court decision "involves an unreasonable application of" clearly established federal law if the state court identifies the correct legal rule from the applicable Supreme Court decision but unreasonably applies it to the facts of the petitioner's case.  *See id.*

When a habeas petitioner proceeds *pro se*, the court holds the petition to less rigorous standards than it holds filings by counseled parties.  *Licausi v. Griffin*, 460 F. Supp. 3d 242, 260 (E.D.N.Y. 2020).  The court must liberally construe the petition to raise the strongest arguments it suggests.  *Id.*  Still, *pro se* petitioners are not exempt from the applicable procedural and substantive rules.  *Banner v. Royce*, 525 F. Supp. 3d 417, 418 (E.D.N.Y. 2021).

## DISCUSSION

Dorcinvil's Petition claims fifteen grounds for relief. (*See* Pet. 6–12(E).)  The Court first addresses the ineffective trial counsel claims (Grounds One, Two, Nine, Ten, Eleven, Twelve), followed by the ineffective appellate counsel claim (Ground Fifteen), general due process claims (Grounds Three,

Four, Five, Six, Seven, Eight, Fourteen), and suppression of evidence claim (Ground Thirteen).

## I.    Ineffective Assistance of Trial Counsel

The Sixth Amendment to the federal Constitution guarantees a criminal defendant the right to assistance of counsel.  U.S. Const. amend. VI.  In *Strickland v. Washington*, the Supreme Court interpreted "assistance" to mean "effective" assistance. 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  An attorney renders ineffective assistance if he or she (1) performs below objectively reasonable professional standards (2) in a way that prejudices the defendant.  *Farhane v. United States*, 77 F.4th 123, 126 (2d Cir. 2023).  Prejudice occurs only when there is a substantial likelihood that the result of the proceeding would have been different but for the attorney's deficient performance.  *Garner*, 908 F.3d at 866.

There is no reason for the court to address both elements of the *Strickland* inquiry if the defendant fails to establish one.  *Id.* at 861.  Further, the court may address the two elements in either order.  *Id.*  The Second Circuit has instructed district courts to dispose of *Strickland* claims solely for lack of sufficient prejudice without "grad[ing] counsel's performance" when it is easier to do so.  *See id.* (quoting *Mitchell v. Scully*, 746 F.2d 951, 954 (2d Cir. 1984)).

14

### A.   Detective Perry's Testimony

Dorcinvil claims his trial attorney, Bandelli, was ineffective because he failed to object to "damaging hearsay" in the form of Detective Perry's testimony that he "had a suspect" after arriving on the scene and speaking to Detective Briano, who did not testify at Dorcinvil's trial.  (ECF No. 1-3, Mem. of Law, Pet'r's *Pro-Se* Br. ("Mem.") 43–47; *see* Trial Tr. 455:25–456:9.)  Dorcinvil further alleges that Perry offered hearsay testimony by mentioning he talked to people who called into the tipline he set up during his investigation.  (Pet. 6(A).)  Dorcinvil also argues that Perry's hearsay testimony violated his rights under the Confrontation Clause.  (*Id.*)  Dorcinvil failed to exhaust this claim in state court before raising it here, but the Court exercises its discretion to reach and reject the claim on the merits.

### 1.   Exhaustion

Dorcinvil raised the *Strickland* claim regarding Perry's hearsay testimony in his direct appeal, and the Appellate Division concluded that Dorcinvil's entire ineffective counsel claim was a "mixed claim" because it concerned both record and non-record issues.  *Dorcinvil*, 122 A.D.3d at 877–78.  Thus, the court concluded that the claim could not be "resolved without reference to matter outside the record" and that Dorcinvil would have to raise it in a collateral challenge rather than on direct

15

appeal.  *Id.* at 878; *see Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016) (recognizing this practice as standard in New York state court).  Dorcinvil did not claim Bandelli was ineffective for failing to object to the State's summation in either of his state collateral challenges.  (Pet. 8.)  Thus, he "deprived the state court of an opportunity to review" this claim and has left it unexhausted.  *See Murray v. Cunningham*, No. 19-cv-767 (DC), 2023 WL 4665761, at *7 (E.D.N.Y. July 20, 2023) (finding "mixed" ineffective counsel claim unexhausted where appellate court instructed petitioner to raise claim in collateral proceeding but petitioner had not done so at time he sought federal habeas relief).

Because Dorcinvil's Petition contains both exhausted and unexhausted claims, it is a "mixed petition."  *See Rhines v. Weber*, 544 U.S. 269, 275 (2005).  A habeas court facing a mixed petition may (1) dismiss the entire petition without prejudice, (2) deny the entire petition on the merits, (3) permit the petitioner to "delete" the unexhausted claims from the petition and return to state court to proceed on the unexhausted claims, or (4) stay the petition until the petitioner exhausts the unexhausted claims.  *Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 129 (E.D.N.Y. 2017).  Dorcinvil has not moved for a stay, and he would not have been able to because he had no good cause for failing to raise this component of his ineffective trial counsel

16

claim in either of his state collateral challenges.  *See id.*

The Court exercises its discretion to reach the merits rather than send Dorcinvil back to state court to raise the claim in a third collateral challenge.  *See* 28 U.S.C. § 2254(b)(2); *Abuzaid v. Mattox*, 726 F.3d 311, 322 n.8 (2d Cir. 2013).  Dorcinvil has not prevailed on a single one of the many claims he raised in his various state court appeals or collateral proceedings, which spanned nearly a decade and generated over one thousand pages of briefing and judicial decisions, and the Court declines to create even more work for the state courts by forcing them to adjudicate yet another plainly meritless claim.  Further, the Court is already considering other of Dorcinvil's ineffective trial counsel claims that the state courts *have* addressed and rejected, which leaves the Court in a position to evaluate the cumulative effect of all allegedly prejudicial *Strickland* errors.  Finally, the Court can resolve the claim based on *Strickland*'s prejudice prong alone solely by reference to the existing record, and nothing in the Petition or record suggests the result could possibly change given additional factual development.  Thus, the Court finds that addressing this component of Dorcinvil's ineffective trial counsel claim now will further "AEDPA's goals of encouraging finality and reducing delays."  *See Johnston v. Senkowski*, No. 01-cv-1770 (NAM), 2005 WL 1388880, at *3

(N.D.N.Y. June 9, 2005).

### 2. Merits

Because there is no state court decision on the merits to defer to, AEDPA deference does not apply and the Court reviews Dorcinvil's claim *de novo*.[8]  *See Folkes v. Lee*, No. 10-cv-5416 (BMC), 2011 WL 2610496, at *4 (E.D.N.Y. June 30, 2011).  Even under *de novo* review, however, Dorcinvil's arguments are meritless.  Under New York law, hearsay is recognized as an "out-of-court statement admitted for the truth of the matter asserted."  *People v. Slade*, 170 N.E.3d 1189 (N.Y. 2021) (*quoting People v. Buie*, 658 N.E.2d 192, 194 (N.Y. 1995)).  The

---

[8] The inapplicability of AEDPA deference complicates the Court's review because the record lacks an affidavit from Bandelli explaining his actions. The Second Circuit held in *Sparman v. Edwards* that "a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs." 154 F.3d 51 (2d Cir. 1998).  The absence of Bandelli's affidavit poses no problem as to Dorcinvil's other ineffective counsel claims because the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), held that the record in cases subject to 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits, thus abrogating *Sparman* with respect to such cases.  *Licausi*, 460 F. Supp. 3d at 259 n.8; *see Ridgeway v. Zon*, 424 F. App'x 58, 60 (2d Cir. 2011).  Because no state court adjudicated Dorcinvil's ineffective counsel claim on the merits, at least as it pertains to the State's summation, the *Sparman* presumption arguably still applies. *See, e.g.*, *United States v. Macaluso*, No. 16-cr-609, 2020 WL 2097837, at *2 (E.D.N.Y. May 1, 2020) (noting court had solicited affidavit from defendant's trial attorney in resolving ineffective counsel claim raised in post-*Cullen* motion under 28 U.S.C. § 2255 to vacate federal conviction).  Nonetheless, the Court can resolve Dorcinvil's claim based on *Strickland*'s prejudice prong alone by simply assuming without deciding – and without casting any aspersions on Bandelli – that Bandelli's performance was deficient, thus rendering it unnecessary for the Court to solicit an affidavit from Bandelli explaining his trial strategy.  *See Broxmeyer v. United States*, 661 F. App'x 744, 750 (2d Cir. 2016) (summary order) ("Although it might have been helpful if the district court had sought affidavits from [defendant's] counsel, none of his claims requires further evidence to determine their validity.") (citation omitted).

challenged testimony – that Perry determined Dorcinvil to be a suspect after he spoke to Briano – was not hearsay because it did not relay to the jury any "statement" by Briano or a tipline caller.  Further, Perry offered this testimony to explain his own actions during his investigation, not to prove the truth of what another person told him.  *See People v. Gross*, 47 N.E.3d 738, 742 (N.Y. 2016) (explaining that testimony is not hearsay when admitted to "complet[e] the narrative of how [the] defendant came to be investigated").  The Appellate Division found as much when it rejected Dorcinvil's claim on direct appeal (not raised in the context of ineffective counsel) that Perry's testimony "constituted impermissible hearsay and bolstering."  *See Dorcinvil*, 122 A.D.3d at 876.

The challenged testimony also did not implicate the Confrontation Clause.  The federal Constitution guarantees criminal defendants the right to confront adverse witnesses, *see* U.S. Const. amend. VI, and the "main and essential purpose of confrontation is to secure . . . the opportunity of cross-examination," *Fuentes v. Griffin*, 829 F.3d 233, 247 (2d Cir. 2016) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)).  Dorcinvil's argument that Perry's testimony "bolstered" B.M.'s identification of Dorcinvil, (*see* Pet. 6(A)), falls short, however, because Dorcinvil had a full and fair opportunity to cross-examine Perry and B.M., *see Licausi*, 460 F. Supp. 3d at

266.  Thus, because any hearsay or Confrontation Clause objection to Perry's testimony would have been meritless, Dorcinvil cannot claim Bandelli was ineffective for failing to make such objections.  *See Blackman v. United States*, No. 16-cr-89 (JS), 2019 WL 2106189, at *5 (E.D.N.Y. May 14, 2019).

Finally, Dorcinvil argues it was error for the trial court to have admitted Perry's "bolstering" testimony identifying Dorcinvil on the video surveillance footage when Perry had not seen him before and that Bandelli was ineffective for failing to object to that testimony.  (*See* Pet. 6(A)).  That argument cannot help Dorcinvil in a federal habeas proceeding because "bolstering" alone, even if forbidden under state law, is insufficiently prejudicial to implicate federal due process. *See* 28 U.S.C. § 2254(a); *Mejia v. Sup't, Elmira Corr. Facility*, No. 20-cv-2836 (KAM), 2023 WL 7857277, at *13 (E.D.N.Y. Nov. 16, 2023).  Moreover, any such error could not have caused *Strickland* prejudice here because Claudette's landlord also identified Dorcinvil as the person in the video.  (*See* Trial Tr. 133:25–134:1, 138:13–17.)  There is no reasonable probability that the jury would not have convicted Dorcinvil had Perry not identified him too.

### B.  The State's Summation

Dorcinvil claims Bandelli was ineffective by failing to

object to allegedly unduly prejudicial comments the State made during its summation.[9]  (Pet. 7-7(A).)  As with Dorcinvil's *Strickland* claim regarding Perry's testimony, Dorcinvil failed to exhaust this claim because he never raised it in a collateral proceeding after being instructed to do so by the Appellate Division, but the Court again exercises its discretion to review the claim on the merits *de novo*.  (*See supra* pp. 15-18.)

Dorcinvil contends Bandelli should have objected when the State allegedly appealed to the jurors' sympathy in an inflammatory way, vouched for B.M.'s credibility, and expressed personal beliefs about Dorcinvil's guilt.  (Mem. 51-55.) Decisions about whether to make objections during the prosecutor's summation are matters of trial strategy "virtually unchallengeable" in a federal habeas proceeding.  *Hamilton v. Lee*, 94 F. Supp. 3d 460, 477 (E.D.N.Y. 2015) (quoting *Strickland*, 466 U.S. at 690-91).  To support habeas relief, the prosecutor must have made improper comments that "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Torres v. Racette*, No. 11-cv-1647 (PKC), 2018 WL 4762246, at *6 (E.D.N.Y. Oct. 2, 2018) (quoting

---

[9] This claim is found in Ground Two of Dorcinvil's Petition, which also asserts that Dorcinvil was "denied a fair trial by . . . the admission of an unnecessary and gruesome photograph of the bloody, half naked decedent." (Pet. 7.)  Because most of Ground Two concerns Dorcinvil's allegations of ineffective counsel, (*see id.* 7-7(A); Mem. 51-55 (elaborating on Ground Two)), the Court addresses that portion of the claim here and addresses the victim's photograph below, (*see infra* pp. 37-38).

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

None of the State's comments come close to any impropriety necessary to justify habeas relief.  The State's references to Dorcinvil as a "guilty man," (*see* Trial Tr. 506:5–23), were permissible as an argument to the jury about how to interpret the evidence the jury already heard and reach a verdict, *see United States v. Oreckinto*, 774 F. App'x 698, 702 (2d Cir. 2019) (summary order) (finding no error when prosecutor showed jury image of defendant captioned "Guilty").  The State's vivid description of Claudette's murder and the trauma it inflicted on B.M., which Dorcinvil deems "inflammatory," (*see* Mem. 52–53), was not improper because prosecutors are not forbidden from "vigorous advocacy" or using "colorful" language in summations, *see Portes v. Capra*, 420 F. Supp. 3d 49, 58 (E.D.N.Y. 2018) (quoting *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992)).  The State also did not convey a "personal belief" in Dorcinvil's guilt to the jury by using the phrase "I submit to you." (*See* Mem. 52–53.)  The phrase "I submit to you" is a common form of verbal filler that attorneys utter when arguing in court, and it does not prejudice criminal defendants when used in a prosecutor's summation.  *See United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996); *Wright v. Poole*, No. 02-cv-8669 (KMK), 2012 WL 4478393, at *9 (S.D.N.Y. Sept. 28, 2012).  Finally, the trial court instructed the jury that summations are

not evidence, and this Court must presume the jury followed that instruction absent any evidence to the contrary.  (*See* Trial Tr. 512:24–513:12); *Joseph v. Conway*, No. 07-cv-5523 (DC), 2023 WL 3092877, at *6 (E.D.N.Y. Apr. 26, 2023) (citing *Gonzales v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)).

Because none of the comments from State's summation that Dorcinvil cites were unduly prejudicial, there would have been no basis for Bandelli to object to them.  *See Broxmeyer v. United States*, 661 F. App'x 744, 749 (2d Cir. 2016) (summary order) (explaining that "absent any prejudicial error in the [prosecutor's] summation," the lack of "an otherwise futile objection could not have rendered counsel ineffective") (quoting *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005)).  Thus, Dorcinvil cannot claim to have suffered *Strickland* prejudice through the lack of objections and cannot obtain habeas relief on this ground.

### C.   Suppression Hearing

Dorcinvil claims Bandelli was ineffective by failing to request a suppression hearing (or "*Mapp* hearing") regarding property the police recovered from Dorcinvil during his arrest in Miami.  (Pet. 12(A).)  Dorcinvil raised this claim in his first motion to vacate, (*see* 1st 440 Mot. 5), and the trial court rejected it as factually incorrect, (*see* D&O on 1st 440 Mot.).  Dorcinvil then raised the claim again in his second

23

motion to vacate, and the trial court rejected it as factually incorrect and because the court's "prior decision and order [was] now also a bar to [Dorcinvil's] attempt to re-litigate the same issue," (D&O on 2d 440 Mot. 6–7 (citing N.Y. C.P.L.R. § 440.10(3)(b))).  This Court reviews the trial court's decision on the second motion to vacate, the last reasoned state court decision addressing this ground for relief after the Appellate Division and New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640.

Dorcinvil's *Strickland* claim based on Bandelli's alleged failure to request a suppression hearing is procedurally defaulted.  The trial court rejected Dorcinvil's claim based on Section 440.10(3)(b) of the New York Civil Practice Law and Rules.  That section generally permits the trial court to deny a motion to vacate where "[t]he ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding" in New York state court "other than an appeal from the judgment."  N.Y. C.P.L.R. § 440.10(3)(b).  The Second Circuit has not addressed whether a state court's proper invocation of Section 440.10(3)(b) operates as a procedural bar, but the consensus among district courts in the circuit is that it does.  *See, e.g.*, *Brown v. Burnett*, No. 19-cv-1295 (TJM), 2021 WL 4990257, at *12 (N.D.N.Y. Oct. 27, 2021); *Jiang v. Larkin*, No. 12-cv-3869 (PGG), 2016 WL 1718260, at *23 (S.D.N.Y.

Apr. 28, 2016); *Nowicki v. Cunningham*, No. 09-cv-8476 (KMK), 2014 WL 5462475, at *9 (S.D.N.Y. Oct. 27, 2014).  The Court finds those district court decisions well reasoned and joins the consensus.  The Court also finds nothing improper about how the trial court invoked Section 440.10(3)(b) here.  Moreover, Dorcinvil has not argued there was good cause for or prejudice resulting from the default, nor has he established actual innocence.  Thus, Dorcinvil cannot prevail on this claim.

### D.   Jury Selection

Dorcinvil claims his trial attorney was ineffective for failing to move to strike an unidentified juror who said during jury selection that she thought she would be "very nervous" without elaborating on what she would be nervous about.  (Pet. 12(B).)  Dorcinvil raised this claim in his second state court motion to vacate, and the trial court rejected it both on the merits and on procedural grounds, (D&O on 2d 440 Mot. 7-8 (citing N.Y. C.P.L.R. § 440.30(4)(b))).  This Court reviews the trial court's decision on the second motion to vacate, which was the last reasoned state court decision addressing this ground for relief after the Appellate Division and New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640.

Despite the trial court's invocation of Section 440.30(4)(b) of the New York Civil Practice Law and Rules, which

permits a court to deny a motion to vacate where the motion
papers lack sworn statements substantiating essential facts,
this Court assumes without deciding that the trial court
adjudicated this claim on the merits.  The Second Circuit has
not addressed whether Section 440.30(4)(b) can support a
procedural default, but because there is an intra-district split
on that question, *see Totesau v. Lee*, No. 19-cv-6992 (PKC),
2022 WL 1666895, at *19 n.30 (E.D.N.Y. May 25, 2022) (collecting
cases), and Second Circuit authority finding that a similar
state procedural rule *cannot* support a procedural default, *see
Giraldo v. Bradt*, No. 11-cv-2001 (JFB), 2012 WL 3835112, at *8
(E.D.N.Y. Sept. 5, 2012) (citing *Garcia v. Portuondo*,
104 F. App'x 776, 779 (2d Cir. 2004) (summary order)), the Court
concludes that this claim is best resolved on the merits.  Thus,
the Court heeds the Second Circuit's suggestion to "hurdl[e] the
procedural questions to reach the merits."  *See Dunham v.
Travis*, 313 F.3d 724, 729-30 (2d Cir. 2002) (explaining that
doing so is justified where the substantive issue easily
resolves against the petitioner and the procedural issue
concerns a complicated state law question); *Totesau*, 2022 WL
1666895, at *19 n.30 (doing so with respect to Section
440.30(4)(b)).

Turning to the merits, Dorcinvil's *Strickland* claim fails
because there was no prejudice.  During jury selection, Bandelli

26

asked whether any prospective juror had a "friend or a friend of

a friend or a family member that [had] been . . . the victim of

domestic violence."  (ECF No. 20-1 pp. 73-221, Voir Dire Tr.

67:19-22.)  One juror apparently signaled that she had a

question, and the exchange proceeded as follows:

> MR. BANDELLI:  Ma'am?
>
> PROSPECTIVE JUROR:  I think I'll be very nervous.
>
> THE COURT:  I prefer that you be nervous because, you
> know, this is a case where it's a hard job.  The
> question is not whether you will be nervous, but can
> you do the job?
>
> PROSPECTIVE JUROR:  I don't know.  My stomach is
> bubbling already.

(*Id.* 68:20-69:3.)  The transcript does not indicate which

prospective juror had this exchange with Bandelli or whether

that juror was seated for trial, but no juror was stricken as a

result of the exchange.

There is no prejudice here because Dorcinvil has failed to

establish that the unidentified prospective juror who thought

she would be "very nervous" was actually seated on the jury.

Second, even assuming this juror was seated, the trial court did

not contradict or unreasonably apply clearly established federal

law in finding that the juror's statements did not evince actual

bias.  A defendant alleging ineffective counsel with respect to

jury selection must show that the juror had "[a]ctual bias."

*United States v. Kelly*, 609 F. Supp. 3d 85, 152 (E.D.N.Y. 2022).

Dorcinvil cites no Supreme Court case holding that a juror's statement expressing a vague sense of nervousness, without more, amounts to actual bias.  To the contrary, the Supreme Court has denied habeas relief even where jurors have "doubted, or disclaimed outright, their own impartiality on voir dire."  *See Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2011) (citing *Patton v. Yount*, 467 U.S. 1025, 1032 (1984)); *accord Figueroa v. Heath*, No. 10-cv-121 (JFB), 2011 WL 1838781, at *12 (E.D.N.Y. May 13, 2011).  Thus, Dorcinvil cannot obtain habeas relief on this ground.

### E.  Alleged Alibi Witness

Dorcinvil claims Bandelli was ineffective for failing to contact alleged alibi witnesses after Dorcinvil gave Bandelli their contact information.  (Pet. 12(C).)  Dorcinvil raised this claim in his first motion to vacate, (*see* 1st 440 Mot. 5), and the trial court rejected it on the merits, (D&O on 1st 440 Mot.).  Dorcinvil then raised the claim again in his second motion to vacate, and the trial court rejected it on the merits again without invoking Section 440.10(3)(b), (D&O on 2d 440 Mot.).  This Court reviews the trial court's decision on the second motion to vacate, which was the last reasoned state court decision addressing this ground for relief after the Appellate Division and New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640.

28

Because the trial court did not invoke the successive motion procedural bar when it denied Dorcinvil's second motion to vacate, the Court concludes this claim is not procedurally defaulted and will review it on the merits, applying AEDPA deference.  The trial court did not contradict or unreasonably apply clearly established federal law in rejecting this claim. The only "alibi" witness Dorcinvil discussed before that court was his fellow inmate, Steven Renaud, who swore an affidavit testifying as to Dorcinvil's whereabouts the day *before* the May 2007 incident.  (D&O on 2d 440 Mot. 8.)  The court thus found this affidavit at most "place[d] [Dorcinvil] in mid-town Manhattan on the day before the crime, evidence which would not have precluded [Dorcinvil's] commission of murder a day later." (*Id.*)  Accordingly, Dorcinvil cannot establish *Strickland* prejudice because he cannot establish a substantial likelihood that Renaud's testimony would have changed the result.  Renaud "had no knowledge of [Dorcinvil's] whereabouts" on May 4, 2007. *See Matthews v. Mazzuca*, No. 01-cv-9369 (HB), 2003 WL 22208358, at *4 (S.D.N.Y. Sept. 23, 2003) (finding counsel not ineffective for not investigating alleged alibi witness who could testify as to petitioner's whereabouts on day of incident but not at time of incident), *aff'd by* 120 F. App'x 856 (2d Cir. 2005).  Even if Renaud's testimony were admitted, it "would have still left open the very real possibility that he in fact visited" Claudette's

apartment on May 4, 2007.  *See id.*  Thus, Dorcinvil may not obtain habeas relief on this ground.

### F.   DNA Expert

Dorcinvil claims Bandelli was ineffective for "never produc[ing]" DNA experts or "request[ing] . . . a hearing to determine whether or not the DNA evidence introduce[d] at trial by the people's experts were reliable."  (Pet. 12(C).) Dorcinvil raised this claim in his first motion to vacate, (*see* 1st 440 Mot. 8-9), and the trial court rejected it as factually incorrect, (*see* D&O on 1st 440 Mot.).  Dorcinvil then raised the claim again in his second motion to vacate, and the trial court rejected it as "without merit" and because the court "decline[d] to revisit" the DNA claims "pursuant to CPL § 440.10(3)(b)." (D&O on 2d 440 Mot. 9).  This Court reviews the trial court's decision on the second motion to vacate, which was the last reasoned state court decision addressing this ground for relief after the Appellate Division and New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640. The Court concludes that this claim is procedurally defaulted for the same reason that Dorcinvil's suppression hearing claim is procedurally defaulted.  (*See supra* pp. 24-25.)

Because each deficiency Dorcinvil alleges in Bandelli's performance resulted in either no prejudice or negligible prejudice, the Court also finds that there is no reasonable

probability that the cumulative effect of all the alleged errors would have changed the result of Dorcinvil's trial. *See Ohle v. United States*, No. 13-cv-450 (JSR), 2015 WL 5440640, at *12 (S.D.N.Y. Sept. 8, 2015). Thus, even considering all of Dorcinvil's *Strickland* claims collectively, he cannot establish the prejudice necessary to obtain habeas relief.

## II. Ineffective Assistance of Appellate Counsel

Dorcinvil claims his appellate counsel, Erica Horwitz, was constitutionally ineffective because she failed to argue on appeal that Dorcinvil's trial counsel was constitutionally ineffective for failing to preserve a Confrontation Clause objection regarding the DNA report and autopsy reports introduced at trial. (Pet. 12(E).) Dorcinvil raised this claim in his *coram nobis* petition, (*Coram Nobis* Pet. 11), and the state appellate court rejected it on the ground that Dorcinvil "failed to establish that he was denied effective assistance of appellate counsel," *Dorcinvil*, 149 A.D.3d at 867. This Court reviews the Appellate Division's decision on the *coram nobis* petition, the last reasoned state court decision addressing this ground for relief after the New York Court of Appeals declined discretionary review. *See McCray*, 45 F.4th at 640.

Here, Horwitz provided the state court an affirmation explaining her appellate strategy. (*See* ECF No. 20-12, Affirmation of Erica Horwitz ("Horwitz Affirmation").) AEDPA

31

thus requires the Court to apply "double deference," comprising both the deference owed to Horwitz's strategic decisions under *Strickland* itself and the deference owed to the state court's application of *Strickland* to Horwitz's performance. *See Simpson v. Bell*, 557 F. Supp. 3d 365, 372 (E.D.N.Y. 2021).  Because the decision under review was a summary disposition, it must stand so long as any reasonable judge "could have" found that Horwitz complied with the *Strickland* standard. *See Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015).  In conducting that analysis, the Court observes the Supreme Court's admonition that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *See id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

The Appellate Division did not contradict or unreasonably apply *Strickland* or any other clearly established federal law in denying Dorcinvil's *coram nobis* petition.  Horwitz filed a 63-page appellate brief on Dorcinvil's behalf raising five claims of error.  (Horwitz Affirmation ¶ 6.)  In response to Dorcinvil's *coram nobis* petition, she explained that she declined to argue Bandelli was ineffective for failing to object to the State's DNA evidence because she found the State's DNA evidence weak and observed that Bandelli exploited it to Dorcinvil's advantage in his summation.  (*Id.* ¶¶ 10–17.)  She

further explained that she declined to argue Bandelli was ineffective for failing to object to the State's autopsy evidence because such an objection would have been squarely foreclosed by state court precedent. (*Id.* ¶¶ 18–26.) Applying AEDPA's doubly deferential standard, the Court concludes that a reasonable judge could have found that Horwitz's selection of appellate issues fell within the range of discretion afforded by *Strickland*, regardless of whether it was the optimal selection or even a good selection. *See Chrysler*, 806 F.3d at 118. Moreover, even if Horwitz's strategy were deemed professionally unreasonable, there was no prejudice. Horwitz *did* argue ineffective trial counsel in the alternative with respect to two of her arguments, (*see* Appellate Br. 49, 62), and the appellate court found those claims formed part of a "mixed claim" of ineffective assistance unsuitable for direct appellate review, *Dorcinvil*, 122 A.D.3d at 877–78. There is no reason to find the additional ineffective trial counsel claims that Dorcinvil would have preferred Horwitz to raise would have met any other fate. Thus, Dorcinvil cannot obtain habeas relief on his ineffective appellate counsel claim.

## III. General Due Process

The federal Constitution provides that a state may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. In a criminal

trial, "due process" means only the "fundamental elements of fairness," not the "meticulous observance of state procedural prescriptions." *Murray v. Noeth*, 32 F.4th 154, 158 (2d Cir. 2022) (quoting *Rivera v. Illinois*, 556 U.S. 148, 158 (2009)).

## A.   B.M.'s Testimony and Medical Records

Dorcinvil claims the trial court denied him due process by finding B.M. competent to testify and denying Dorcinvil's request for disclosure of B.M.'s mental health records.  (Pet. 9–9(A).)  Bandelli had made a pre-trial motion to exclude B.M.'s testimony based on B.M.'s alleged "cognitive issues" that Bandelli argued affected B.M.'s perception.  (Voir Dire Tr. 8:8– 18.)  The court denied the motion, reasoning that B.M.'s medical issues were irrelevant to his competency to testify.  (*Id.* 8:19– 9:6.)  The court also denied Bandelli's request for disclosure of B.M.'s school psychological evaluation after the court reviewed the records *in camera*.  (*Id.* 10:1–13:23.)

When Dorcinvil raised this claim in his direct appeal, the Appellate Division rejected on the merits Dorcinvil's challenge to B.M.'s competency to testify and found Dorcinvil's challenge to the trial court's refusal to disclose B.M.'s medical records inappropriate for review on direct appeal because it was based on matter outside the record.  *Dorcinvil*, 122 A.D.3d at 877. Dorcinvil did not raise this claim in either of his state court motions to vacate.  (Pet. 9.)  This Court thus reviews the

Appellate Division's decision on Dorcinvil's direct appeal, the last reasoned state court decision addressing this ground for relief after the New York Court of Appeals declined discretionary review. *See McCray*, 45 F.4th at 640.

The Appellate Division did not contradict or unreasonably apply clearly established federal law in permitting B.M. to testify. Federal habeas relief is available only for errors of federal law and "does not lie for errors of state law." *Jones v. Hendrix*, 599 U.S. 465, 490 (2023) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). A child witness's competency to testify in New York state court is governed by New York state law, specifically Section 60.20(2) of the Civil Practice Law and Rules. Dorcinvil's claim thus does not implicate federal law and cannot support habeas relief. *See Ramos v. Lee*, No. 19-cv-1125 (JS), 2021 WL 3269237, at *9 (E.D.N.Y. July 30, 2021) ("Whether the trial court properly admits sworn testimony from a child complainant in accordance with the requirements of C.P.L. § 60.20(2) is a matter best left to the New York state courts."); *see also DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) (admonishing district courts not to repackage alleged state law errors as federal law errors by simply framing them as due process violations).

Dorcinvil's challenge to the trial court's refusal to disclose B.M.'s psychological evaluation is unexhausted because

he did not raise it in his second state court motion to vacate after the appellate court found it improperly raised on direct review; however, the Court again exercises its discretion under 28 U.S.C. § 2254(b)(2) to address and reject this claim on the merits under *de novo* review.  (*See supra* pp. 15–18.)

Dorcinvil's claim fails on the merits.  Trial courts have "wide latitude" to limit cross-examination to avoid testimony only "marginally relevant."  *Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  Specifically, a trial court may constitutionally restrict inquiry into a witness's psychiatric history if the proponent of such evidence fails to reasonably link it to the facts at issue.  *Drake v. Woods*, 547 F. Supp. 2d 253, 267 (S.D.N.Y. 2008).  The standard procedure when a court faces a request for disclosure of sensitive materials is to review the materials *in camera* and determine whether they are appropriate for cross-examination.  *Viera v. Sheahan*, No. 16-cv-4048 (KAM), 2020 WL 3577390, at *6 (E.D.N.Y. June 30, 2020).

Under these standards, the trial court committed no error in refusing to disclose B.M.'s psychiatric records.  Before trial, the court examined B.M.'s records *in camera* found Bandelli already had "enough" to effectively cross-examine B.M. as to his perception of the events as the crime occurred.  (Voir Dire Tr. 13:15–21.)  At trial, Bandelli cross-examined B.M.

regarding his stay in a psychiatric hospital.  (*See* Trial Tr. 48:6-55:5.)  In summation, Bandelli argued B.M. was not credible and that he was lying.  (*Id.* 496:14-499:7.)  Dorcinvil has provided no reason to find the marginal impeachment value gained from disclosure of *more* of B.M.'s medical records would have materially improved Bandelli's ability to cross-examine B.M. or that there was any defect in the trial court's *in camera* review process.  *See McGeachy v. Perez*, No. 11-cv-3906 (DC), 2023 WL 1830802, at *9 (E.D.N.Y. Feb. 7, 2023) (denying habeas relief where "substantial cross-examination of [witness's] mental health history was permitted" and "there was no evidence that [additional records] would not have been cumulative" of witness's other testimony).  Thus, Dorcinvil may not obtain habeas relief on this ground.

**B.   Trial Exhibits**

Dorcinvil claims the trial court violated his due process rights by admitting a photo of Claudette after the January 2007 assault, a photo of Claudette after the May 2007 murder, video surveillance of the May 2007 incident, and Dorcinvil's arrest photos.  (Pet. 7; 10-10(A).)  Dorcinvil raised this claim in his direct appeal.  (Appellate Br. 50-54.)  The Appellate Division rejected the claim on the merits as to the May 2007 photo of Claudette and Dorcinvil's arrest photos.  *Dorcinvil*, 122 A.D.3d at 876-77.  It found Dorcinvil's claim as to the January 2007

photo of Claudette and the video footage "unpreserved for appellate review and, in any event, without merit." *Id.* at 877. Dorcinvil did not raise his evidentiary claims regarding the trial exhibits in either of his state court motions to vacate. (Pet. 8.)  This Court thus reviews the Appellate Division's decision on Dorcinvil's direct appeal, the last reasoned state court decision addressing this ground for relief after the New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640.

Dorcinvil's evidentiary claims regarding the January 2007 photo and the arrest photos are procedurally defaulted.  Though the Appellate Division concluded they were "unpreserved for appellate review" without citing a particular procedural rule, *Dorcinvil*, 122 A.D.3d at 877, the Court finds that the Appellate Division likely relied on New York's contemporaneous objection rule, which is a valid procedural bar in New York state court, *see Carey v. Connell*, No. 10-cv-3873 (DLC), 2012 WL 37084, at *4 n.1 (S.D.N.Y. Jan. 6, 2012) (concluding habeas claims were procedurally defaulted based on contemporaneous objection rule where Appellate Division wrote that claims were "unpreserved for appellate review and, in any event, without merit"); *Whaley v. Graham*, No. 06-cv-3843 (JFB), 2008 WL 4693318, at *7 (E.D.N.Y. Oct. 15, 2008) (same).  Because Dorcinvil has not argued there was good cause for or prejudice resulting from the default, nor

has he established that he is actually innocent, those claims cannot support habeas relief.

The Appellate Division did not rely on a procedural bar to reject Dorcinvil's claims regarding the May 2007 photo of Claudette and arrest photos but rather addressed those claims on the merits, so this Court reviews the Appellate Division's decision on those evidentiary rulings with AEDPA deference. State court evidentiary rulings generally present state law questions inappropriate for review in a federal habeas proceeding. *See Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012). A state court evidentiary error cannot support habeas relief unless the error amounted to a federal due process violation. *Enoksen v. Squires*, 532 F. Supp. 3d 75, 93 n.13 (E.D.N.Y. 2021). Evidence erroneously admitted under state law does not violate due process if it was "at least arguably relevant," *Vega*, 669 F.3d at 126, but not "sufficiently material to provide the basis for conviction" or "remove a reasonable doubt" that otherwise would have existed, *Heidgen v. Graham*, 420 F. Supp. 3d 1, 11 (E.D.N.Y. 2019). Moreover, to overcome AEDPA deference, the petitioner must identify a Supreme Court decision clearly establishing that erroneously admitting the specific *kind* of evidence at issue violates due process. *Evans v. Fischer*, 712 F.3d 125, 133-35 (2d Cir. 2013) (reversing district court for granting habeas relief without citing a sufficiently

similar Supreme Court case).

Here, the Court may not grant habeas relief on Dorcinvil's claim as to the photograph of Claudette's body because no Supreme Court precedent holds that the admission of a photograph of a victim's body violates due process. *See Fernandez v. Ercole*, No. 14-cv-2974 (HBP), 2017 WL 2364371, at *5 (S.D.N.Y. May 31, 2017). As to Dorcinvil's arrest photographs, the state court ruling was not erroneous because New York law permits the admission of a defendant's arrest photograph. *See King v. Coveny*, No. 18-cv-2851 (KPF), 2022 WL 4952537, at *9 (S.D.N.Y. Oct. 3, 2022). Moreover, there was no due process violation because the photographs were at least arguably relevant to show that Dorcinvil changed his appearance after Claudette's murder, thus evincing consciousness of guilt; however, the photographs were also insufficiently material to form the basis of Dorcinvil's conviction in light of the overwhelming evidence against him. Thus, Dorcinvil's claims as to the trial exhibits cannot support habeas relief.

### C.   Joinder

Dorcinvil claims he was denied a fair trial because the trial court denied his motion to sever the charges and instead conducted a single trial regarding the January 2007 and May 2007 incidents. (Pet. 11(A); *see* Voir Dire Tr. 2:22–6:6.) The court explained that the May 2007 incident related to the January 2007

incident because it involved Dorcinvil's violation of the orders of protection that resulted from the January 2007 incident. (Voir Dire Tr. 6:21–7:12.)  The court further explained that two trials would require B.M., a minor who had moved out of state, to return to New York twice to testify, and that the court would not permit that result.  (*Id.* 7:13–15.)

Dorcinvil raised this claim in his direct appeal, and the Appellate Division rejected it on the merits.  *See Dorcinvil*, 122 A.D.3d at 877.  Dorcinvil did not raise the claim in either of his state court motions to vacate.  (Pet. 11(A).)  This Court thus reviews the Appellate Division's decision on Dorcinvil's direct appeal, the last reasoned state court decision addressing this ground for relief after the New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640.

The state court did not contradict or unreasonably apply federal law in rejecting Dorcinvil's prejudicial joinder claim. A state court's decision whether to join or sever charges is a matter of state law that generally cannot support habeas relief. Prejudicial joinder amounts to a constitutional violation only when it renders the petitioner's trial fundamentally unfair in violation of federal due process.  *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993); *accord Fields v. N.Y.S.D.O.C.C.S.*, No. 20-cv-9 (PKC), 2023 WL 6292479, at *9 (E.D.N.Y. Sept. 27, 2023).  To prevail, the petitioner must show *actual* prejudice

resulting from the joinder, not just the potential for prejudice. *Fields*, 2023 WL 6292479, at \*9. Moreover, a state court may constitutionally consider matters of judicial convenience in deciding to join charges. *Conroy v. Racette*, No. 14-cv-5832 (JMA), 2017 WL 2881137, at \*13 (E.D.N.Y. July 6, 2017).

Here, Dorcinvil fails to establish that he suffered actual prejudice from the joinder. The charges stemming from the May 2007 murder of Claudette and stabbing of B.M. "inextricably related" to the charges stemming from the January 2007 assault of Claudette and B.M. because Dorcinvil's contact with the victims in May 2007 violated the order of protection that was issued in response to the January 2007 incident and thus formed the basis for the criminal contempt charges. (*See* Trial Tr. 524:12-19); *Fields*, 2023 WL 6292479, at \*10. Further, it was appropriate for the state trial court to have considered the fact that B.M., a minor witness who had moved out of state, would have had to return to New York to testify if there were two trials. *See Conroy*, 2017 WL 2881137, at \*13. Thus, the trial court's denial of Dorcinvil's motion to sever did not violate due process and Dorcinvil may not obtain habeas relief on this ground.

### D.   Suppression Ruling

Dorcinvil claims the state trial court unconstitutionally

permitted the State to elicit suppressed statements on direct
examination.  (Pet. 11(A)-(B).)  Before trial, the State
conceded that two of Dorcinvil's post-arrest statements were
obtained illegally and agreed only to introduce those statements
to impeach Dorcinvil if he chose to testify.  (*See* ECF No. 20-1
pp. 1-72, Hr'g Tr., 4:2-13, 68:6-70:14.)  The statements
concerned the route Dorcinvil took to travel from New York City
to Miami and Dorcinvil's theory that another man stabbed
Claudette and B.M.  (*Id.* 46:13-47:20.)  The trial court appears
to have acknowledged the State's concessions without explicitly
ruling that Dorcinvil's statements were obtained
unconstitutionally.  (*See id.* 4:14, 68:6.)  The State sought a
ruling that the statements were not coerced and thus usable for
impeachment, and the state trial court agreed to make that
ruling.  (*Id.* 70:15-71:1.)

At trial, the State elicited the following testimony from
Detective Perry on direct examination, which Dorcinvil alleges
violated the trial court's "suppression" ruling:

Q.  What did you do in Miami, Florida?

A.  I transported Jacques [Dorcinvil] back to New
York.

Q.  Did you learn how he came to be in Florida or –
did you learn how he came to be in custody in
Florida[?]

MR. BANDELLI:  Objection.

A.  Yes.

THE COURT:  Overruled.

Q.  How is that?

A.  He walked into the consulate looking for a
passport.

Q.  Did you eventually place Jacques [Dorcinvil] under
arrest?

A.  Yes, I did.

(*Id.* 462:25-463:14; *see* Pet. 11(B).)  This testimony does not
reveal the route Dorcinvil took to travel from New York to
Florida.

Dorcinvil raised this claim in his *pro se* supplemental
brief in support of his direct appeal, (*see* Suppl. Appellate Br.
34-42), and the Appellate Division rejected it as "unpreserved
for appellate review and, in any event, without merit,"
*Dorcinvil*, 122 A.D.3d at 877.  Dorcinvil did not raise this
claim in his state court motions to vacate.  (Pet. 11(B).)  This
Court thus reviews the Appellate Division's decision on
Dorcinvil's direct appeal, which was the "last reasoned state-
court decision to address" this ground for relief after the New
York Court of Appeals declined discretionary review.  *See*
*McCray*, 45 F.4th at 640.

This claim is procedurally defaulted.  The Appellate
Court's conclusion that the claim was "unpreserved for appellate
review" invoked a procedural bar even if the court also
addressed the merits.  *See Carey*, 2012 WL 37084, at *4 n.1

(explaining that a state court's rejection of a claim on both procedural and substantive grounds invokes a procedural bar if phrased in the conjunctive rather than in the disjunctive). Though the Appellate Division did not cite a precise procedural ground, it need not do so, *Simms v. Lilly*, No. 21-cv-702 (PKC), 2022 WL 4451003, at *6 (E.D.N.Y. Sept. 23, 2022), and the Court declines to conclude that the Appellate Division misapplied its own procedural law when that court both explicitly invoked it and had a valid justification.  In its response to Dorcinvil's *pro se* supplemental appellate brief, the State noted that this claim was "unpreserved for appellate review" because Bandelli failed to state the grounds supporting his objection to the testimony at issue and made no further application after the trial court overruled the objection.  (ECF No. 20-9, Resp't's Br. in Reply to Def.'s *Pro Se* Suppl. Br. ("State's Appellate Br.") 40.)[10]  The Court finds that the Appellate Division likely relied on New York's specific objection rule to find Dorcinvil's claim unpreserved.  *See* N.Y. C.P.L.R. § 470.05(2); *People v. Britt*, 145 N.E.3d 207, 213 (N.Y. 2019) (finding "one-word objections, without any elaboration" insufficient to preserve

---

[10] The State also suggested the claim was unpreserved for appellate review because Bandelli did not seek to reopen the suppression hearing.  (*See* State's Appellate Br. 39-40.)  The Court declines to address that ground as additional support for the Appellate Division's conclusion due to the relative dearth of federal habeas case law addressing it as a basis for procedural default.

objection to trial testimony for appellate review); *see also, e.g.*, *Anderson v. Martuscello*, No. 17-cv-9638 (KMK), 2021 WL 4429333, at \*12 (S.D.N.Y. Sept. 27, 2021) (relying on New York's specific objection rule to apply procedural default where Appellate Division deemed petitioner's claim "unpreserved for appellate review" without specifying a procedural ground). Dorcinvil has not argued there was good cause for or prejudice resulting from the default here, nor has he established actual innocence.  Thus, Dorcinvil cannot prevail on this claim.

### E.  Missing Witness Instruction

Dorcinvil claims the state trial court denied him due process and violated his rights under the Confrontation Clause by refusing to give a missing witness instruction as to Detective Briano, who investigated the January 2007 and May 2007 incidents but did not testify at the trial.  (Pet. 11(B).)  By the time of Dorcinvil's trial, Briano had retired from the police force and moved out of state.  (Trial Tr. 444:20-445:10.)

Dorcinvil raised this claim in his direct appeal, and the Appellate Division rejected it, concluding that "[a]ny errors in this regard were harmless, as there was overwhelming evidence of [Dorcinvil's] guilt and no significant probability that the errors contributed to [Dorcinvil's] convictions," without opining one way or the other whether the trial court *did* err, *Dorcinvil*, 122 A.D.3d at 876-77.  Dorcinvil did not raise this

claim in either of his motions to vacate.  (Pet. 11(B).)  This
Court thus reviews the Appellate Division's decision on
Dorcinvil's direct appeal, the last reasoned state court
decision addressing this ground for relief after the New York
Court of Appeals declined discretionary review.  *See McCray*,
45 F.4th at 640.

The Appellate Division's harmless error determination was a
merits adjudication.  *See Brown v. Davenport*, 596 U.S. 118, 127
(2022).  To obtain habeas relief in light of a state court's
harmless error ruling, the petitioner must both overcome AEDPA
deference and satisfy the requirement the Supreme Court set
forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), of
establishing that the alleged error had a "substantial and
injurious effect or influence" on the trial's outcome, *Brown*,
586 U.S. at 126–27.  If a habeas claim falls because the
petitioner cannot show *Brecht* prejudice, "there is no need to
prolong the matter" by also conducting an AEDPA review of the
state court's harmless error analysis.  *Id.* at 138–39.

Dorcinvil cannot obtain habeas relief based on his missing
witness instruction claim because even assuming the trial court
erred in refusing to give such an instruction, Dorcinvil cannot
show that *Brecht* prejudice resulted from the alleged error.  A
trial court's erroneous refusal to give a missing witness
instruction is subject to a harmless error analysis, *Johnson v.*

*Griffin*, No. 13-cv-4337 (MKB), 2022 WL 3347771, at *13 (E.D.N.Y. Aug. 12, 2022), as is a Confrontation Clause violation, *United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004); *accord Sims v. Artus*, No. 07-cv-6187 (JFB), 2019 WL 3718024, at *8 (E.D.N.Y. Aug. 7, 2019).  Thus, the Appellate Division's decision must stand unless the Court finds that the lack of a missing witness instruction substantially influenced the verdict.

The lack of a missing witness instruction here had at most a negligible effect on the verdict.  First, there was overwhelming evidence of Dorcinvil's guilt.  *See Johnson*, 2022 WL 3347771, at *14 (finding "any error in the refusal to give a missing witness charge" harmless in light of overwhelming evidence of guilt).  As Dorcinvil argued on appeal, the *only* disputed factual issue at trial was whether the State proved his identity as the attacker beyond a reasonable doubt.  (Appellate Br. 50.)  B.M. – with whom Dorcinvil lived for months before the attacks – made an in-person identification of Dorcinvil and testified in detail about Dorcinvil's January 2007 and May 2007 attacks.  (Trial Tr. 22:6–47:20.)  B.M.'s testimony regarding the May 2007 incident was corroborated by surveillance footage showing a man, identified by Claudette's landlord as Dorcinvil, walking past Claudette's dead body.  (*Id.* 123:6–138:17.)  B.M.'s testimony was further corroborated by the admission of the jacket Dorcinvil left at the scene, which had both victims'

blood on it, Dorcinvil's DNA on the collar, and Dorcinvil's driver's license and passport in its pockets. (*Id.* 296:2-8, 451:5-453:3.)

Additionally, though Briano was involved in the investigation, most if not all of the testimony he might have offered had he testified would have been cumulative with other witnesses' testimony, given that B.M. and other officers involved in the investigation were called as witnesses. *See Page v. Conway*, No. 10-cv-5264 (DAB) (KNF), 2013 WL 2896798, at *9 (S.D.N.Y. May 3, 2013) (finding any possible error in "the trial court's refusal to give a missing witness jury instruction" harmless "because the record did not provide any basis for the jury to find that" the witness "possessed material, non-cumulative information"), *R&R adopted by* 2014 WL 1877677 (S.D.N.Y. May 8, 2014). Moreover, the trial court issued other instructions "mitigat[ing] against the absence of the missing witness instruction," including that the jurors were required to "decide the case on the evidence alone without speculating concerning matters not presented," which "specifically precluded" the jury from "speculating about what [Briano] would have said had he testified." *See Johnson*, 2022 WL 3347771, at *13; (Trial Tr. 512:14-23). Finally, the trial court permitted Bandelli "to comment in summation about [Briano's] failure to testify," which further "mitigate[d] the

impact of a failure to give a missing witness charge." *See Johnson*, 2022 WL 3347771, at *13; (Trial Tr. 481:11-21 ("Where is Detective Briano?  I have no idea.  He's not here. . . . Why isn't he here?  Why isn't he here?"), 482:16-18 ("There is a reason you didn't hear from Detective Briano.  I don't know what it is, but he should have been here and that's on them."), 488:19-20 ("Where is Detective Briano?  Where is he?  He's not here."), 496:12-13 ("[W]here is the Detective Briano?  Where is he?"), 497:20 ("Where is Detective Briano?  Where is he?")). Because Dorcinvil cannot show that the lack of a missing witness instruction substantially influenced the verdict in light of these circumstances, he cannot show *Brecht* prejudice and thus cannot obtain habeas relief on this ground.

### F.   "Prior Arrests" and "Complaints"

Dorcinvil claims he suffered due process and Confrontation Clause violations when the trial court allowed Detective Perry to testify that he discovered Dorcinvil had "past arrests" and "complaints" after running an electronic background check on him.  (Pet. 11(B), 12(E).)[11]  Dorcinvil first raised this claim in his direct appeal, and the Appellate Division rejected it based on harmless error without opining whether the trial court actually erred in admitting this testimony.  *See Dorcinvil*,

---

[11] Dorcinvil raises this claim twice in his Petition, citing it as both his Eighth and Fourteenth ground for relief.

122 A.D.3d at 876–77.  Dorcinvil did not raise this claim in either of his state court motions to vacate.  (Pet. 11(B), 12(E).)  This Court thus reviews the Appellate Division's decision on Dorcinvil's direct appeal, the last reasoned state court decision addressing this ground for relief after the New York Court of Appeals declined discretionary review.  *See McCray*, 45 F.4th at 640.  As with Dorcinvil's missing witness instruction claim, (*see supra* pp. 46–47), the Appellate Division's harmless error ruling was a merits adjudication that cannot be disturbed unless Dorcinvil can both show *Brecht* prejudice and overcome AEDPA deference, *see Brown*, 586 U.S. at 126–27.

This claim fails because Dorcinvil cannot show *Brecht* prejudice.  As described above, (*see supra* pp. 48–49), the evidence of Dorcinvil's guilt was overwhelming.  The allegedly improper testimony, by contrast, consisted of just four lines in a 537-page trial transcript.  (Trial Tr. 457:21–24.)  Given the mass of specific evidence linking Dorcinvil to the crimes at issue, Perry's brief and general suggestion that Dorcinvil had other encounters with law enforcement could not have substantially influenced the verdict.  Moreover, by the time Perry offered this testimony, the jury had already properly heard that Dorcinvil was arrested for the January 2007 incident and had an order of protection entered against him, (*see id.*

51

471:16-22), which mitigated against the possibility the jury
might have speculated about other crimes Dorcinvil may have
committed.  Thus, because Dorcinvil cannot show *Brecht*
prejudice, he cannot obtain habeas relief on this ground.

## IV.  Suppression of Exculpatory Evidence

Dorcinvil claims the State suppressed exculpatory evidence
in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (Pet.
12(D); *see* Reply 49-55.)  Dorcinvil first raised this claim in
his second state court motion to vacate, (*see* 2d 440 Mot. 22-
31), and the state trial court rejected it as "procedurally
barred because it relie[d] on a misapprehension of the facts,"
(D&O on 2d 440 Mot. 10).  The court explained that the evidence
seized from Dorcinvil's person during his arrest in Miami was
not introduced at trial.  (*Id.*)  Rather, the State showed
evidence recovered from the May 2007 crime scene itself weeks
earlier.  (*Id.*)  This Court reviews the trial court's decision
on the second motion to vacate, the last reasoned state court
decision addressing this ground for relief after the Appellate
Division and New York Court of Appeals declined discretionary
review.  *See McCray*, 45 F.4th at 640.

This claim is not procedurally defaulted.  The state trial
court rejected the claim based on N.Y. C.P.L.R. § 440.30(4)(c),
which permits the court to reject a claim if "[a]n allegation of
fact essential to support the motion is conclusively refuted by

unquestionable documentary proof."  (*See* D&O on 2d 440 Mot. 11.)
A state court's rejection of a claim based on Section
440.30(4)(c) is an adjudication on the merits, not an invocation
of a procedural bar.  *Giraldo*, 2012 WL 3835112, at *8 (citing
*Garcia*, 104 F. App'x 776 at 779).  Thus, the Court reviews the
claim on the merits, applying AEDPA deference.

The state trial court did not contradict or unreasonably
apply *Brady*.  A *Brady* violation occurs when the prosecution
suppresses material exculpatory evidence.  *McCray*, 45 F.4th at
641.  Dorcinvil utterly fails to articulate how any of the items
seized from him during his arrest in Miami weeks after the May
2007 incident (a Bible, driver's license, state identification
cards, debit card, business card, and sunglasses) and that were
never introduced at trial, (*see* D&O on 2d 440 Mot. 10),
constitute material *or* exculpatory evidence.  Thus, Dorcinvil
cannot obtain habeas relief on this ground.

<u>**CONCLUSION**</u>

The Court respectfully denies Dorcinvil's Petition and
dismisses this action with prejudice.

The Clerk of Court is respectfully requested to amend the
caption to reflect that Marlyn Kopp is the respondent, enter
judgment in favor of Kopp, serve a copy of this Memorandum and
Order and the judgment on Dorcinvil, note service on the docket,
and close this case.

In accordance with 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and thus denies *in forma pauperis* status for the purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).


**SO ORDERED.**

Dated:     January 5, 2024
           Brooklyn, New York

                                        _____
                                        KIYO A. MATSUMOTO
                                        United States District Judge
                                        Eastern District of New York